SLIP OPINION

Cite as 2015 Ark. App. 725

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-52

| | |
|---|---|
| JENNIFER BROWN | **Opinion Delivered** December 16, 2015 |
| APPELLANT | |
| | APPEAL FROM THE GARLAND |
| V. | COUNTY CIRCUIT COURT |
| | [NO. JV-2014-631] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE VICKI SHAW COOK, |
| HUMAN SERVICES AND MINOR | JUDGE |
| CHILD | |
| APPELLEES | REVERSED AND REMANDED |

## PHILLIP T. WHITEAKER, Judge

This is an appeal of an order terminating parental rights from the Garland County Circuit Court. This is the second time that this court has heard this matter. In the first appeal, counsel for Appellant Jennifer Brown filed a motion to be relieved from representation and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004) and Rule 6-9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals. We denied counsel's motion to withdraw and ordered rebriefing in merit format. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 425. The case is now before us on the merits of the order terminating Brown's parental rights to her daughter, S.B.[1]

---

[1] S.B.'s father, Frederick Brown, was also a party to the proceedings below. His parental rights, however, were not terminated and, therefore, he is not a party to this appeal.

The relevant facts concerning the child's removal and the court's proceedings were detailed in our previous opinion and are repeated here. On September 4, 2014, the Department of Human Services (DHS) received a hotline referral alleging that the appellant was using methamphetamine while caring for eight-month-old S.B. A family-service worker conducted a home assessment and confirmed drug usage in the presence of the child. Instead of removing the child, the family service worker developed a protection plan allowing the child to remain with the appellant, provided that she not use drugs unless they were prescribed to her.

The next day, the appellant contacted DHS requesting help. The appellant informed the family-service worker that she was concerned for S.B.'s safety because S.B.'s homeless and drug-addicted father, Frederick Brown, had taken the child from the home with nothing but a bottle and the clothes and diaper the child was wearing. The family service worker located Mr. Brown and the child at his sister's house. Mr. Brown tested positive for methamphetamine, amphetamine, cocaine, and THC. At that time, the family-service worker removed the child and instituted a seventy-two-hour hold.

After the child had been removed, the family service worker obtained additional information on the appellant, including her social security number. A subsequent Children's Reporting and Information System (CHRIS) check revealed that the appellant had a history with DHS, including an involuntary termination of her parental rights to another child.

An ex parte order for emergency custody was entered on September 9, 2014, and counsel was appointed. A probable-cause order was entered the next day. The only services

ordered at that time were directed at the father, Frederick Brown. No services were offered to the appellant except supervised visitation with the child.

On September 11, 2014—less than one week after removal—DHS filed a petition to terminate the appellant's parental rights. As the grounds for termination, DHS alleged that, in September 2009, her parental rights to one of S.B.'s siblings had been involuntarily terminated. DHS did not seek to terminate the parental rights of Frederick Brown at that time.

The adjudication and termination hearings were held simultaneously on October 23, 2014. At the hearing, DHS introduced evidence of the appellant's previous history with the department. Counsel for the appellant attempted to introduce evidence that S.B. was not born with drugs in her system in contrast to the child for whom the appellant's previous rights had been terminated. The trial court denied admission of such evidence, determining that such evidence was not relevant, and then prevented counsel from completing a proffer of that evidence upon further objection by DHS.

The trial court adjudicated the child dependent–neglected and ultimately found that termination was in the best interest of the child. Separate orders of adjudication and for termination of parental rights were entered on October 28, 2014. Brown appeals the termination order, alleging the trial court committed reversible error by (1) failing to address the statutorily mandated factor of adoptability, (2) improperly finding that her past history with DHS involving her other children was sufficient to support a finding of potential harm

to this child, and (3) prohibiting her from introducing evidence to distinguish the current situation from her past interactions with the department.

We review termination of parental rights cases de novo. *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. An order terminating parental rights must be based upon a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought after termination is in the children's best interest. Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

Here, there is admittedly a statutory ground for termination—the previous involuntary termination of Brown's rights to another child. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*4*) (Supp. 2015). As a result, Brown does not appeal the statutory grounds for termination; instead, her appeal is essentially an attack on the court's best-interest finding. In making a "best-interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 4, 431 S.W.3d 364, 367; *Harper v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884.

Brown first argues that the trial court erred in failing to address the statutorily mandated factor of adoptability, and the State concedes this point. Our court has said that "[a]doptability is merely a consideration and not a requirement." *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, at 13, 378 S.W.3d 227, 233. Even so, "[c]onsideration requires evidence . . . or at least some finding by the trial court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference." *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4. Therefore, under our prior cases, the circuit court's best-interest analysis will be insufficient unless there is some evidence regarding adoptability or the court explains why termination is in the best interest of the children regardless of their adoptability.

Here, there was no evidence introduced at the hearing regarding the adoptability of S.B. Further, the court made no finding that this absence of evidence of adoptability made "no legal difference" to the ultimate decision of what was in the child's best interest. Accordingly, the trial court clearly erred when it found that termination of Brown's parental rights to the child was in her best interest without addressing the adoptability factor.

Brown also argues that the trial court improperly denied evidence on relevancy grounds. She argues that DHS was relying on Brown's past history with the Department to make the case that termination was in this child's best interest. This evidence was received by the court as relevant. However, when Brown attempted to rebut that evidence with evidence highlighting the differences between this case and her previous cases, the court found that evidence to be irrelevant. This ruling was in error.

We review a court's decision to admit or exclude evidence for an abuse of discretion. *Holmes v. State*, 2014 Ark. App. 502, at 4, 441 S.W.3d 916, 918. Arkansas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The court's focus in the best-interest analysis is on the child before the court. Thus, while it is clear that evidence of a parent's history with the child's siblings and DHS may be relevant to the analysis, it is even more clear that evidence as to the parent's relationship with the particular child at issue is relevant as to whether the parent's parental rights to that particular child should be terminated. Thus, the trial court's failure to allow Brown to introduce such evidence was an abuse of discretion.

Because the trial court improperly failed to consider or address adoptability and other relevant evidence in performing its best-interest analysis, we need not address Brown's contention that the trial court's best-interest analysis on the facts below was erroneous. Rather, we reverse and remand for further deliberation by the trial court after consideration of the appropriate evidence.

Reversed and remanded.

ABRAMSON and VIRDEN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.