

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV–17–356

| | |
|---|---|
| ERIK STEVEN CANADA<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** September 27, 2017<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04JV-15-342]<br><br>HONORABLE THOMAS SMITH, JUDGE<br><br>AFFIRMED |

### RITA W. GRUBER, Chief Judge

Erik Canada appeals from the Benton County Circuit Court's order terminating his parental rights to L.C. (born September 10, 2011) and J.C. (born January 10, 2014). He brings two points on appeal: (1) the circuit court's best-interest finding was clearly erroneous because the court lacked evidence of adoptability and (2) there was insufficient evidence to establish grounds for termination. We affirm the circuit court's order terminating appellant's parental rights.

The children were taken into custody by the Arkansas Department of Human Services (DHS) on June 4, 2015, after a police officer discovered them in a parked car with their mother, Kimberly Hill, who told officers that she was homeless.[1] Appellant was not married to Kimberly, but he is the legal father of L.C. and J.C. and was in an ongoing relationship with her. Appellant was located about 400 to 500 feet away from the car. Police

---

[1]Ms. Hill consented to termination and is not a party to this appeal.

discovered a broken glass pipe with marijuana residue on it in the car and a digital scale that had methamphetamine residue on it in the backseat with the children. Kimberly admitted having used methamphetamine outside the car while the children were sleeping. Both appellant and Kimberly were arrested and charged with felony possession of drug paraphernalia. Kimberly was also charged with misdemeanor drug possession.

The affidavit attached to the petition for emergency custody also revealed that appellant had been arrested in 2013 for third-degree domestic battering regarding an incident with Kimberly, that the couple fought regularly, and that there was a no-contact order between Kimberly and appellant at the time the children were taken into custody. In an order entered on August 11, 2015, the court adjudicated the children dependent-neglected due to parental unfitness and inadequate supervision. Appellant was ordered by the court to submit to drug-and-alcohol screens, complete parenting classes, obtain and maintain stable and appropriate housing, obtain and maintain stable and gainful employment, submit to a drug-and-alcohol assessment and complete all recommended treatment, attend anger management, and resolve all criminal issues.

On May 3, 2016, the circuit court continued a permanency-planning hearing for a month to allow appellant to enter and complete a drug-treatment program. The court resumed the hearing on June 7, 2016, and found that appellant was not compliant with the case plan and was not moving toward resolving the issues that caused removal of the children. DHS filed a petition for termination on August 31, 2016, pleading two grounds for termination: (1) the children had been adjudicated dependent-neglected and had continued out of the home of the noncustodial parent for twelve months and despite a

meaningful effort by DHS to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the parent had failed to remedy the conditions; and (2) aggravated circumstances: there was little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(i)* and (ix)*(a)(3)* (Repl. 2015). The court entered an order on January 30, 2017, terminating appellant's parental rights on both grounds. The court also found that it was in the children's best interest to terminate appellant's parental rights, specifically considering adoptability and potential harm.

We review termination-of-parental-rights cases de novo. *Wilson v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 666, at 7, 476 S.W.3d 816, 821. The trial court must make two findings by clear and convincing evidence: (1) at least one statutory ground exists and (2) it is in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341). In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 4, 431 S.W.3d 364, 367. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, at 4, 478 S.W.3d 272, 275. Credibility determinations are left to the fact-finder. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 6, 434 S.W.3d 371, 375.

SLIP OPINION

### I. *Grounds for Termination*

Appellant contends that the evidence presented was insufficient to support either of the court's findings on grounds for termination. Only one ground is necessary to support the court's termination of parental rights. *King v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 368, at 5. We turn first to the court's finding of aggravated circumstances, specifically that there is little likelihood that services to the family will result in successful reunification. Appellant argues that he had participated in parenting classes, counseling, and anger management and, at the time of the termination hearing, he was in a drug-treatment program. He claims that these actions indicated that he was making progress and that additional services could result in successful reunification.

The termination hearing was held on October 11, 2016. At that time, appellant had been in a drug-treatment program for one week and had four or five weeks remaining. The court recognized that appellant was in treatment and expressed the hope that he would continue the treatment, but it also stated that it was unknown whether he would continue in treatment and that the children could wait no longer. They had been in DHS custody for sixteen months. Appellant had attempted treatment in February 2016 for one week and again in July 2016 for several weeks. He had broken the rules during both treatments and been expelled from the programs before completing either. He also testified that he had not seen his children since May 2016, had not had steady employment or housing since the children had been in DHS custody, and was on probation for assault on the children's mother and possession of drug paraphernalia at the time of the hearing. Our review of this evidence convinces us that the court's finding of aggravated circumstances is not clearly

erroneous. Because we find no clear error with the circuit court's finding on this ground, it is unnecessary to address the second ground. *Ware v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 480, at 7, 503 S.W.3d 874, 879.

## II. *Adoptability*

Appellant also argues that the circuit court clearly erred in finding that it was in the best interest of the children to terminate because there was insufficient evidence introduced to establish that the children were adoptable. The trial court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights are terminated. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, at 7, 492 S.W.3d 113, 117. Adoptability is not an essential element of proof. *Singleton v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 455, at 6, 468 S.W.3d 809, 813. In order for a circuit court to consider adoptability, this court has not required DHS to introduce abundant evidence of adoptability; rather, we have held that "[c]onsideration requires evidence . . . or at least some finding by the trial court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference." *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4. We have explained that this does not require DHS to provide the names of specific adoptive parents for the children or even provide evidence that it has identified such persons at the termination hearing. *Singleton*, 2015 Ark. App. 455, at 6, 468 S.W.3d at 813.

Here, the caseworker testified that DHS had begun looking for potential adoptive placements for the children and that it had "had some luck with that." She continued, the children "are reasonably likely to be adopted if they were free for adoption." On cross-

examination, the caseworker said that the children would be adopted together and that she had "several homes that would fit the criteria of these children."

In its order, the court found that it was in the best interest of the children to terminate appellant's parental rights, specifically considering adoptability. The court cited the caseworker's testimony that adoption would be "reasonably likely" upon termination and specifically found her testimony to be credible. We cannot say that the court's finding on best interest was clearly erroneous.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee Arkansas Department of Human Services.